Okay, we will hear argument next in No. 23-1210, RKW Klerks v. United States. And first, let me thank everybody for your patience. Mr. Reed. Your Honors, may it please the Court, Patrick Reed for the appellant RKW Klerks. Your Honors, the Court of International Trade committed reversible error because it applied an incorrect legal standard in determining whether the imported net wrap on its cardboard core is a part of a bailing machine. This Court's legal standard has made it clear that the test for a part is a two-part disjunctive test, an either-or test. Either the imported net wrap must be dedicated solely for use with the bailing machine, or alternatively, it must be integral to the function of the bailing machine, necessary to the function, so that the bailing machine could not perform its function without the net wrap. The lower court erroneously changed the standard into a conjunctive test. It said that the importer needed to satisfy both the dedicated solely for use test and the integral to the function test. That was incorrect because this Court's decision in the Bauerland case made it absolutely clear that the importer only needs to satisfy one test. In that case, it was the canopies. You do not dispute that the integral to the function test is not satisfied here, or do you? We do. We dispute that. I was going to get to that. We think that the case is simpler because the lower court found that the net wrap satisfies the dedicated solely for use test. And if the court had correctly applied the disjunctive standard… You could also use twine or something, right? Why would it be integral to the function? Can you answer that for me? Sure. So there are, I think, a couple of errors that we see in the lower court. First was the alternative use of twine instead of net wrap. And the cases say that an item is integral to the function if it is necessary for one of the functions of the machine. So that's illustrated by the cases of the… It was a filter adapter for a camera where the filter adapter only was used for color pictures, but not for black and white. And so the camera would still perform its function of taking pictures, but black and white, not color. And then a case of the interchangeable viewfinders for cameras with interchangeable lenses. You could use one viewfinder, but that didn't mean that the others were not integral to the test, because they were integral to the function because it was necessary for using one particular lens. The trade court in the last couple pages of its opinion provided some reasoning that I'm particularly interested in and focused on. And it's the notion that this net wrapping is basically a consumable input of the machine, just like the hay is a consumable input. And then the machine takes the inputs and then produces an output, and that is a wrapped, compressed bale of hay. And so in that way, the inputs, the hay and the net wrap, are not integral to the function of the machine. The machine is capable, as is, without the net wrap and without the hay, of performing its intended function. Thank you, Your Honor. To use the inputs to produce the resulting output. We disagree with that part of the court's ruling as well. And I think the place to the analogy is the MITA copy star case of the toner cartridge for the copying machine. There's no housing here, right? Well, there's a cardboard core that holds the… But the MITA and Brother cases, there was some kind of housing for the toner or the ink or whatever it was. That was structurally compatible with the larger machine. And so the housings were therefore integrated with the machine to be a delivery system for the things like the toner. And I just don't see anything equivalent of that with your merchandise here. What corresponds to the housing is the cardboard core that the net wrap is wrapped around. And so it is the cardboard core with the net wrap that is inserted into the bailing machine. And so the basic distinction is the toner was inside the cartridge. Here, the net wrap is wrapped around the core, but the cardboard core and the cartridge are analogous. But what is the role of the cardboard tube inside of the bailing machine? My understanding is there's a compartment in the bailing machine where you stick this net wrap roll into it. And then you dispense out the amount of wrapping you need to wrap the real product, which is the hay. Well, but the cardboard core holds the net wrap. And so the net wrap couldn't be used and inserted without being on the core. Right, but I guess the point I have is that when it comes to the typewriter ribbon spool of decorated metal or these cartridges and these other cases, they're all mechanically interacting with the larger machine in order to deliver something, whether it's toner or typewriter ribbon across the typing zone. And so these structures, whether it's the spool that's mounted on a shaft in decorated metal, or whether it's the cartridge in a printer that's cooperating with the rest of the larger machine, there's structural mechanical interactions there that there's no evidence of here in this record that is necessary and essential for this cardboard tube to interact with the larger bailing machine to dispense out this wrapping to wrap the bales of hay. We think, nevertheless, the cardboard core... I don't think you argued the cardboard tube below, did you? I looked at your summary judgment brief and I didn't see anything like that. I didn't see anything about a cardboard tube. Certainly it was stated in the facts that the cardboard core was there. Did you argue this as something being an essential part, component of the larger machine in order to deliver the net wrapping in a way that would produce the final product? I cannot remember. It's not a long brief, but I read it and I didn't see it. So then the next question is, can you make these kinds of arguments here? I believe that we can because the issue is whether the net wrap is integral to the function of the bailing machine, and we certainly made that argument. And it was an undisputed fact that the net wrap is wrapped around the cardboard core and that that is necessary in order to have it installed into the bailing machine. Judge Cunningham earlier, I think, referred to the fact that the bailing machine obviously doesn't need any tying item to do the bailing. And then for tying, it doesn't need net wrap because it can use twine. So how could this be on this integral to the function aspect? This is what I would call in shorthand the interchangeable part issue. The bailing machine has multiple functions. One of its functions is to wrap the bails with net wrap, and it cannot perform that function without net wrap. It's like the camera doesn't need the filter adapter to take black and white pictures, but in order to take color pictures, it needed the filter adapter. Where in that situation, I don't have the case in mind, but where in that situation is the equivalent of the twine? The twine is the absence of the filter for black and white. Oh, OK. All right. And does it matter here that while I gather it is either agreed or found or that this net wrap is never used except in conjunction with its delivery by one of these machines? But it is, of course, used for a long period after it emerges from the machine. So it's not under what Bauerlin, it's not like the canopy and the car seat. I think that's what that was, where the use is for all time in conjunction with the thing of which it is a part. This is just, you need to deliver it, but after that, it's going to sit out in the field or wherever these bails sit. Well, there we think that the net wrap is analogous to the toner from the copying machine. The toner is imprinted onto the paper, and the paper is discharged. And the image created by the toner stays on the paper as long as the paper lasts, just in the same way that the net wrap remains wrapped around the bail. The toner is part of the machine? The toner in the cartridge is, the toner cartridge, the cartridge containing the toner is part of the copying machine. I thought the analysis was really more focused on the cartridge and how the cartridge cooperates with the other parts of the machine to create the larger machine to perform its intended function, which is to deliver ink onto paper so that you have documents. The alternative classification in the copy star case was based on the classification of the toner, not the cartridge. And so our position is that the cartridge is analogous to the cardboard core, the toner is analogous to the net wrap, and so the net wrap, like the toner, and the paper is analogous to the hay. What if there was no cardboard tube? Would you still say that your role of net wrap is part of the bailing machine? That would be a much more difficult issue, which I haven't fully considered, but let's assume that it might not be. Okay, so it comes down to the cardboard tube. Right. That is, of course, we've been discussing the integral to the function branch of the legal standard. It is what's undisputed that the net wrap satisfied the other dedicated solely for use test, and the court, I think, correctly reached that result. It clearly determined that the sole use of the net wrap… It's got an other, maybe even more important use, which is when it's wrapped around the bales of hay out in the field or on the truck to deliver the bales of hay from point A to point B. And that's really the ultimate important role of this wrap. We think this analogous to the function of the toner in the toner cartridge that creates the image that stays on the paper. And perhaps the other point to make under the cases on the dedicated solely for use test, there the court distinguished the will-be case of the tripods. And one important point was that tripods provided support to the camera. And the court mentioned in will-be that similarly a piano bench supports the pianist but is not part of the piano. The typewriter table supports the typewriter but is not part of the typewriter. And so the entire distinction that this is a separate and commercial entity doesn't apply because that's really limited to the commercial, to the support function, as in for the tripod. And also tripods could… I think you were starting to get there but I didn't quite catch your answer. Could you say it again? Oh, so it is that it is dedicated solely for use with the baling machine. It's not a separate and distinct commercial entity because that is the distinction made. Bauerlin incorporated the will-be case where it said that the tripod was not… The tripod was a separate and distinct commercial entity because it could support other things other than the camera. And here the netwrap is used solely with the baling machine just in the way that the canopies in the Bauerlin case were used solely with the child seats. Let me ask you this one housekeeping question. If we find that the netwraps cannot be classified as parts, do you agree we don't need to reach your prevailing classification issue? If I understood your question, you're asking if you disagree with the parts classification, then you don't need to reach the competing because you only reach that if you're comparing the two. Okay, thank you. I think your time is up. We'll restore some rebuttal time but we should hear from Mr. Makers. Thank you. Good afternoon, Your Honors. Luke Mathers for the United States. Netwrap is not a part of a hay baling machine. It's a warp-knit textile that's consumed by a hay baler to create a product, baled hay. That makes netwrap a separate and distinct commercial identity from a hay baler. It's a consumable material, not a part, just as a roll of film isn't part of a camera. And this Court's predecessor in the Customs Court have held that the most analogous materials to netwrap, bale ties and bale twine, are also not parts of hay balers. Can you address that META copy star case that Upholding Counsel talked about? Yeah, absolutely. META is probably their best case, but I think it actually helps the government's position here. The first point is one that Judge Chen brought up as well, which is that META is classifying the toner cartridge and not just the toner within it. That's an important distinction that the trade court picked up on as well. The toner cartridge is a delivery system for toner within the copier. And the other important point there, too, is that the toner cartridge stays within the machine, the copier, throughout its useful life. The toner cartridge isn't expelled every time you print a piece of paper out. But that's not like what we have here with the netwrap. It's being cut, fit over a bale of hay, and then ejected to serve its useful purpose of protecting the hay for storage and transport. Actually, I took it away from something I was interested in. You were talking about twine. Can you go back to that? I don't want to forget that part, too. No, absolutely. Thank you, Your Honor. Twine's an analogous material. Netwrap, I think, was created back in the 80s to replace twine as a material in baling hay. It's performing the same exact function that it was performing in George William Ruff, which is the Customs Court case from 1952. So it's really just a consumable input is the way that we would put it, just like a spool of thread. And just to address the cardboard core point, we do think that that argument is forfeited. It wasn't raised below. But even if you were to address that, I just want to point out that Note 1C to Section 16, which covers Heading 8433, specifically excludes cores and similar supports of any material from classification under any heading in Chapter 16, which would include Heading 8433. Why would that stop it from being a part? Because it would stop it from being classified within Heading 8433, meaning it would be outside of the scope of the parts section of the provision that counsel is relying on. So nothing that is a core or similar support of any material can be classified under Heading 8433. And so you could think of that as it's not considered a part or it's excluded, even if it were a part from being classified. If the netwrap was on a spool – It would be the same outcome. It would also be excluded. With those big circular disks on the end of the spool kind of holding the netwrap in place, and then the spool is mounted on some shaft, and then the netwrap is coming off, but the spool then becomes something akin to a delivery system. Wouldn't that then, the spool of netwrap, be considered a part of the bailing machine? If the spool – Just like in decorated metal where the spool of typewriter ribbon was deemed to be a part of the typewriter? Well, I'll deal with typewriter ribbons in a second because there's a point I want to make about that. But if it were more than just a support, then I would agree that it would be doing something, you know, mechanically interacting with the machine, as you put it. That would be a different case. It's not the case that we have here because, I believe, the only interaction that the cardboard core has with the hay baler is it's being attached with claws or it's being mounted like a paper towel would on a paper towel holder. But just to the typewriter ribbon point, I would also point out that Note 1Q to Section 16 specifically says that typewriters or similar ribbons, whether or not in spools or in cartridges, are classified according to their constituent material. So they're also excluded from classification as a part of a typewriter. And I think that's one of the dangers of relying on some of these analogies. Are you saying decorated metal is no longer good law? If it classified a typewriter ribbon as a part of a typewriter, then yes, it's no longer good law. What if it's a spool? Same problem. If it's a spool, if it's just a support. If it was a spool in decorated metal, whatever that merchandise was, it was a spool of typewriter ribbon and it was deemed to be a part of the typewriter. To the extent that the spool is driving the classification and the spool were just a support, then it would be excluded. But if it were more than that, it's possible that it would be correctly classified as a part. But you don't have to get into any of that here because, again, the cardboard core is just performing this passive function. It's what the netwrap is being wrapped around. And there wasn't, again, any of this argument below as to the cardboard core, so it's all forfeit anyway. Okay. And just to talk about Bowron briefly, I think the trade court reasonably read Bowron, that you have some cases that fall on the Willoughby line and some cases that fall more along the lines of Pompeo. We have, obviously, Wilbur Ellis and George William Ruff, which both follow that Willoughby line and classify the most analogous materials that we have to the material here. But, again, you don't need to delve into any of that, get into disjunctive, conjunctive. The bottom line point is that the netwrap is a consumable material that becomes incorporated within the product of the machine. Well, if there's two available tests, then don't we have to consult both of them to see whether or not this particular merchandise qualifies as a part? I think you do, yes, absolutely. But you can satisfy either one of them, and then you'll be considered a part. Yes, but dedication for use isn't the end of the inquiry. I'd point you to this court's decision in Baxter Healthcare Corp., which came two years after Bowron. It concluded that it was a monofilament at issue in that case that was being incorporated into oxygenators. The monofilament was dedicated for use in the oxygenators, but that wasn't the end of the inquiry. The court still said that's actually still a material because it hasn't been cut to size yet, basically. So it's not the end of the inquiry under the HDSES whether there is dedication for a particular use. And as you pointed out, the life of this netwrap continues outside the machine as well. So, yes, you're never going to use the netwrap without a hay baler, but its life, its use, continues beyond its container. You're never going to use it without having used the hay baler. Correct, exactly. The business about connection with is a word that is doing a number of different things, some of which are probably applicable and some of which are not. Right, and I think maybe we were less than precise in formulating it below and in our briefs, but I think that's the bottom line conclusion that you should reach here. Unless there are further questions, we'll ask you first. Thank you. Three minutes before we go. Thank you, Your Honors. I will just take a couple of minutes. First, I wanted to respond to the point about the Baxter case. There, one of the issues is whether the monofilament was finished article, and that's not in dispute here. It's not disputed. The netwrap is a finished good. It doesn't need further processing. In Baxter, the monofilament needed further processing, and that is why it was not a part. Government counsel also mentioned the old cases of the baling wire and the baling twine, and those are distinguishable because of the change in technology on the baling machines. In the original case of the baling wire, the baling machine simply held the bale in place, and it had to be attached manually by the farmer. Here is the machine itself that wraps the netwrap around the bale, and so the netwrap and the baling machine together contribute to the function of wrapping the bale with the netwrap. And then simply to conclude, we reiterate the lower court committed reversible error by applying the incorrect two-part test, applying both standards, where we only needed to satisfy the first standard, the dedicated-only-for-use test, which the lower court determined that the importer did satisfy. Thank you, Your Honour. Thank you for your argument. Thanks to all counsel. The case is submitted.